IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-00030-RBJ

VERONICA PENA-FLORES,

    Plaintiff,

v.

VALLEY VIEW HOSPITAL ASSOCIATION,

    Defendant.

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on defendant Valley View Hospital ("VVH")'s motion for summary judgment. ECF No. 30. For the reasons stated herein, the motion is DENIED.

## I. BACKGROUND

This case arises out of plaintiff Ms. Pena-Flores' former employment with VVH, a Colorado nonprofit hospital, and VVH's alleged discrimination against Ms. Pena-Flores due to an injury she sustained on the job. ECF No. 1 ¶ 3. Ms. Pena-Flores brings claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111–12117, and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 24-34-401, *et. seq*.

VVH hired Ms. Pena-Flores in January 2016 as a dietary aide in the Nutrition Services Department. ECF No. 31 ¶ 1. Dietary aides rotate among various tasks including menu coordination, tray passing, floor stocking, and cashier duties. *Id*. Menu coordination involves obtaining orders from patients, ensuring orders comply with the patients' doctors' food instructions, and overseeing food preparation. *Id.* ¶ 2. Tray passing involves preparing patients' meal trays based on information provided by the menu coordinators and using carts to deliver the

1

trays to patients. *Id.* ¶ 3. Floor stocking involves loading supplies—including refrigerated food, napkins, and other products—onto a wheeled cart and pushing the cart around the hospital. *Id.* ¶ 5.

Prior to Ms. Pena-Flores' injury, she made some mistakes while working as a menu coordinator. On at least one occasion in March 2016, Ms. Pena-Flores provided food of an incorrect texture to a patient. *Id.* ¶ 7; ECF No. 31-1 ¶¶ 5–6. VVH asserts that this occurred three times, although Ms. Pena-Flores claims that this occurred only once and only as a result of incorrect information from a coworker. ECF No. 31-1 ¶¶ 5–6. Ms. Pena-Flores was warned "to be more careful" regarding patients' dietary restrictions. ECF No. 30 ¶ 7. On approximately April 8, 2016 Ms. Pena-Flores took a photograph on her personal cell phone of a patient's dietary order, which contained the patient's name and date of birth. *Id.* ¶ 8. Ms. Pena-Flores was instructed not to have patient information on her personal phone. *Id.* On one occasion prior to mid-June 2016, Kitchen Chef Kurt Hoeke was unable to find Ms. Pena-Flores and reminded her that she needed to be in the kitchen by 7:00 a.m. *Id.* ¶ 9.

In June 2016 Ms. Pena-Flores suffered an injury to her right wrist while pulling the stocking cart. ECF No. 1 ¶¶ 20, 22; ECF No. 30 ¶ 17. On June 14, 2016 Ms. Pena-Flores' healthcare provider proscribed her a twenty-pound lift limitation on her right arm. ECF No. 30 ¶ 18. Ms. Pena-Flores provided this work restriction to Elisa Scarbrough—the Patient Services Supervisor during the relevant time—and Lynn Morrison—the Interim Director of Food and Nutrition Services. *Id.* ¶¶ 6, 18.

On June 15, 2016, Ms. Pena-Flores experienced pain after passing trays and using more than twenty pounds of force with her right arm to move a patient. ECF No. 30 ¶ 19; ECF No. 31 ¶ 16. Ms. Pena-Flores also provided the incorrect food trays to two patients that day. ECF No.

30 ¶ 19. Later that same day Ms. Pena-Flores met with Ms. Morrison and Amy Larsen—the Employee Relations Specialist—to discuss her pain. *Id.* ¶ 20. Ms. Larsen told Ms. Pena-Flores to take the rest of the day off and to see her healthcare provider. ECF No. 30 ¶ 20.

Following this incident, Ms. Pena-Flores placed food on trays but did not push the food tray cart. *Id*. ¶ 21. She also stocked fewer items and used her left hand to maneuver the stocking cart and take products out of boxes. *Id.* ¶ 22. On June 23, 2016 VVH provided Ms. Pena-Flores with a work flow document that limited her to certain duties within her work restrictions. *Id.* ¶ 23. The work flow document also limited her work hours, although Ms. Pena-Flores denies that this accommodation was either requested or necessary. *Id*.; ECF No. 31 ¶ 21.

Ms. Pena-Flores' healthcare provider updated her work restrictions twice in July 2016. ECF No. 30 ¶ 31. On July 10 her healthcare provider instructed Ms. Pena-Flores not to use her right arm at all. *Id*. Two weeks later, on July 26, her healthcare provider instructed Ms. Pena-Flores not to lift or exert force of more than two pounds with her right arm. *Id*.

Ms. Pena-Flores testified that she was never expressly instructed to do a task that violated these updated work restrictions. ECF No. 30 ¶¶ 26, 31. Yet she also testified that on approximately four or five occasions her supervisors counseled or scolded her for failing to finish tasks in a timely manner. ECF No. 30 ¶ 32; ECF No. 31 ¶ 29. Ms. Pena-Flores does not remember the dates of these occasions, except that they occurred after her injury. ECF No. 31-2 at 58:2–59:20. Additionally, on one occasion Mr. Hoeke asked Ms. Pena-Flores to pass trays and push the cart, which Ms. Pena-Flores believed exceeded her work restrictions. ECF No. 30 ¶¶ 9, 28. Ms. Pena-Flores did not do so because another employee completed the task for her. ECF No. 31 ¶ 25. Ms. Pena-Flores was not disciplined for this. ECF No. 30 ¶ 28.

On July 11, 2016 Ms. Pena-Flores met with Ms. Larsen to discuss her concern that

3

pressure from her supervisors to work faster was forcing her to violate her work restrictions. ECF No. 31 at 7. Ms. Pena-Flores believes that Ms. Larsen never investigated these issues, and VVH does not dispute this belief. *Id.*

The exact timeline of subsequent changes to Ms. Pena-Flores' work flow duties thereafter is unclear. However, the parties agree that "[t]oward the end of her employment," Ms. Pena-Flores' assigned tasks included wiping down tables with her left hand, folding towels, making lists of items that needed to be stocked, placing food on trays, stocking items in the cafeteria, setting out dishes, and other similar tasks. ECF No. 30 ¶ 33; ECF No. 31 ¶ 39. The parties dispute Ms. Pena-Flores' ability to complete these tasks. Ms. Larsen testified that Ms. Pena-Flores told her that Ms. Pena-Flores "could do nothing at the end of her time at [VVH], that she was not capable or able to do any job that [they] offered" her. ECF No. 30-6 at 111:17–19. Claudia Gredig—the Employee Health and Worker's Compensation Case Manager—also confirmed that Ms. Pena-Flores told her and Ms. Larsen that "there were no job duties [Ms. Pena-Flores] could perform without experiencing pain in her injured or non-injured hand or arm." ECF No. 30 ¶ 6; ECF No. 30-4 ¶ 14.

Yet Ms. Pena-Flores states that she never told supervisors that her job duties caused her any pain in her uninjured left arm or that she could not perform her assigned tasks. ECF No. 31-1 ¶ 11. She claims that she could use her left arm normally, and that she found ways to perform her assigned tasks without violating her restrictions. *Id.* ¶¶ 10–11.

Additionally, Ms. Pena-Flores believes that there were other duties, beyond those that were assigned to her towards the end of her employment, that she was also able to perform. She believes she could perform the duties related to the cashier shifts and the menu coordinator shifts. ECF No. 30 ¶ 36. Although Ms. Pena-Flores was not assigned cashier or menu

4

coordinator duties towards the end of her employment, as a dietary aide she had been trained in these duties and had performed them previously. *Id*. Ms. Pena-Flores never expressly asked to be reassigned solely to the cashier or the menu coordinator positions. ECF No. 30-2 at 138:22–139:9. However, she did suggest to Ms. Larsen that she "could do [the cashier position] well." *Id*. Ms. Pena-Flores also claims that she asked Silvia Vasquez, a cafeteria assistant and coworker to Ms. Pena-Flores, to ask Randy Dombrowski, the manager of the cashier area, about moving Ms. Pena-Flores to the cashier position. *Id*.; ECF No. 30-8 ¶ 1. VVH denies that Ms. Pena-Flores ever requested this of Ms. Vasquez. ECF No. 32 ¶ 36.

VVH terminated Ms. Pena-Flores' employment on August 3, 2016. ECF No. 30 ¶ 37. The termination summary indicated that Ms. Pena-Flores was terminated because she was "not performing the job duties that she was hired to do." ECF No. 31 at 7. The summary also indicated that she would be eligible for rehire once cleared for full duty by her doctor. *Id*. Ms. Pena-Flores testified that she was told that she was terminated "because [she] wasn't performing [her] job the way that [she] did when [she] started." *Id*. VVH's motion asserts that VVH terminated Ms. Pena-Flores because she "could not perform the essential functions of her position with or without reasonable accommodations and no other position for which Ms. Pena-Flores was qualified was available." *Id*.

After her termination, Ms. Pena-Flores did not apply for any jobs for the remainder of 2016. ECF No. 30 ¶ 38. In a doctor's note dated January 27, 2017, Ms. Pena-Flores' healthcare provider wrote that she had "[n]o use of the right hand." ECF No. 32-5 at PLAINTIFF 000688. The provider also wrote that Ms. Pena-Flores told him that she "cannot really hold even a cup of tea, cannot do her job," and was "having increasing pain" despite using a wrist brace. *Id*.

In March 2017 Ms. Pena-Flores was in communication with a family about working as a

caregiver for a family member, but this fell through. ECF No. 30-10 at 5. Beginning on April 25, 2017 she worked at Culver's of Glenwood Springs for about six weeks before quitting to undergo surgery on her right wrist. *Id.* at 3–4. She applied for five additional jobs between July 2017 and December 2017. *Id.* at 4–5. She did not apply for any jobs in 2018. ECF No. 30 ¶ 40. She testified that this was because it would be difficult to balance work with her doctor's appointments and because her attorney had advised her to wait. ECF No. 30-3 at 30:3–31:17.

On February 7, 2018 she applied for assistance with the Colorado Department of Labor and Employment's Division of Vocational Rehabilitation. ECF No. 30-7 at PLAINTIFF 3202. After her case closed (presumably due to inactivity) she reapplied on November 30, 2018. *Id.* In 2019, she applied to five jobs with the help of that agency, and an additional two jobs on her own. ECF No. 30-10 at 4–6. She worked at Creperie Du Village in Aspen for seven days in January 2019 before quitting due to wrist pain. *Id.* at 5. In February 2019 she applied to, and subsequently was offered, a job as cashier at Marshall's in Glenwood Springs. *Id.* at 6. The most recent information that Ms. Pena-Flores has provided about her job status is that as of February 28, 2019, she was in training for the cashier position pending the store's opening. *Id.* at 6. Neither party has provided further information about Ms. Pena-Flores' current job status.

## Procedural Background

On January 24, 2017 Ms. Pena-Flores filed a charge of discrimination with the Colorado Civil Rights Division. ECF No. 1 ¶ 9. Pursuant to agreement between the Colorado Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC"), Ms. Pena-Flores' charge was also concurrently filed with the EEOC. *Id*. Neither party has provided a copy of Ms. Pena-Flores' EEOC charge, but its contents are not at issue here.

On January 4, 2018 Ms. Pena-Flores filed a complaint in this Court against VVH. ECF

No. 1. The complaint alleged eight causes of action: (1) unlawful discharge in violation of the ADA, (2) unlawful discharge in violation of the CADA, (3) retaliation in violation of the ADA, (4) retaliation in violation of the CADA, (5) failure to accommodate in violation of the ADA, (6) failure to accommodate in violation of the CADA, (7) hostile work environment in violation of the ADA, and (8) hostile work environment in violation of the CADA. *Id*.

On April 29, 2019 VVH filed the instant motion for summary judgment on all of Ms. Pena-Flores' claims. ECF No. 30. VVH asserts that Ms. Pena-Flores has failed to prove any of her claims, and additionally that her claims are precluded for failure to mitigate damages. *Id*. In response, Ms. Pena-Flores voluntarily dropped her claims for hostile work environment under both the ADA and CADA. ECF No. 31 at 1.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III. ANALYSIS

### A. <u>Failure to Mitigate</u>

First, VVH asserts the affirmative defense that Ms. Pena-Flores has failed to mitigate her damages. ECF No. 30 at 19. A defendant carries the burden of establishing that a plaintiff failed to mitigate her damages. *See Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1474 (10th Cir. 1993). To meet this burden, "the employer must establish that: (1) there were suitable positions which the [employee] could have discovered and for which [she was] qualified, and (2) the [employee] failed to use reasonable diligence in seeking such positions." *Id.* In analyzing a plaintiff's "reasonable diligence," the Tenth Circuit has held that a plaintiff "is required to make only reasonable exertions to mitigate damages, and is not held to the highest standards of diligence. . . . It requires only an honest good faith effort." *Equal Employment Opportunity Comm'n v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980) (quoting *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 938 (10th Cir. 1979)).

Ms. Pena-Flores does not attempt to dispute VVH's argument that she failed to use reasonable diligence in seeking work for which she was qualified. ECF No. 31 at 19. Ms. Pena-Flores did not seek alternative employment until six months after her termination. *Id.* ¶ 38. Notes from her healthcare provider in January 2017 indicate that she was had "[n]o use of the right hand." ECF No. 32-5 at PLAINTIFF 000688. In 2017 she applied to seven jobs, including one at which she worked for approximately six weeks. She applied to no jobs in 2018 because, although she testified that she was physically able to work, she decided it would be too difficult to balance work with her doctor's appointments. ECF No. 30-12 at 7; ECF No. 30-3 at 30:3–31:17. She even stated that "[t]here are lots of different jobs that [she] could have performed since [her] surgery [in July 2017] that would have fit within the restrictions that [her] doctor gave

8

[her]."  ECF No. 30-12 at 7.  Between January and February 2019 she applied to seven more jobs, including one that she worked at for seven days.  ECF No. 301-1 at PLAINTIFF 3202.  The most recent information about Ms. Pena-Flores' job status is that as of February 28, 2019, she was in training for a cashier position with a new Marshall's location pending the store's opening.  ECF No. 30-10 at 6.

Yet VVH must prove both prongs of the two-part test.  *See Aguinaga*, 993 F.2d at 1474 (finding that "the individual mitigation efforts of [p]laintiffs . . . are simply irrelevant" given that the employer "failed its burden of establishing . . . that suitable positions were available for any of the [p]laintiffs").  Despite Ms. Pena-Flores' apparent self-admitted lack of due diligence, VVH has failed to produce evidence indicating that there were suitable positions which Ms. Pena-Flores could have discovered and for which she was qualified.  The Tenth Circuit requires that employers prove not only the existence of suitable positions, but also the availability of those positions.  *See EEOC v. Beverage Distributors Co., LLC*, No. 11-CV-02557-CMA-CBS, 2013 WL 6458735, at *3 & n.5 (D. Colo. Dec. 9, 2013), *aff'd in part, rev'd in part sub nom.*, 780 F.3d 1018 (10th Cir. 2015) (collecting cases).  For example, one Colorado district court held that the defendant-employer failed to meet its burden where its expert witness "testified only that the [Bureau of Labor Statistics] states that warehouse and driver–helper positions existed, but offered no testimony regarding how many of those positions were currently occupied by other workers and, therefore, unavailable to [the plaintiff]."  *Id.* at *3.  Here, VVH proffers no evidence beyond Ms. Pena-Flores' statement that she was physically capable of working and that "[t]here are lots of different jobs that [she] could have performed."  ECF No. 30-12 at 7.  Because this statement provides no indication of how many positions were actually available to Ms. Pena-Flores, it is insufficient to meet VVH's burden.

9

VVH attempts to argue that it need not satisfy the first prong of the test. VVH cites to First Circuit case law that allows such an exemption in the "relatively rare case where an employee has remained completely idle following her discharge." *See Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999) (allowing that defendant-employer need not prove that there existed suitable positions where plaintiff-employee failed to apply for any other jobs for the eighteen-month period between her termination and the date of judgment). Even if First Circuit case law were binding on this Court, Ms. Pena-Flores did not "remain[] completely idle following her discharge." *Id*. Although it took her six months to begin applying for jobs after her termination, and although she was "idle" for twelve months in 2018, Ms. Pena-Flores has applied to a total of fifteen jobs (and accepted positions, however brief, with three of those jobs) since her termination in August 2016.

VVH further argues that the Tenth Circuit applied this exception in *Sanchez v. Mora-San Miguel Electric Co-op. Inc*. *See* 173 F.3d 864, *7 (10th Cir. 2016) (unpublished table decision). In *Sanchez*, the Tenth Circuit did not expressly require the defendant-employer to establish that there were suitable positions which the plaintiff-employee could have discovered and for which she was qualified. *Id*. Instead, the court held that the plaintiff-employee failed as a matter of law to mitigate her damages where she applied to five jobs during the month immediately after her termination, and no jobs for the following eleven months leading to the date of judgment. *Id*.

It is true that Ms. Pena-Flores applied to no jobs during the entirety of 2018—a twelve-month period greater than the eleven-month period in *Sanchez*. Yet *Sanchez* is an unpublished, nonprecedential decision. I will not rely on *Sanchez* when there is a significant amount of binding Tenth Circuit precedent that requires VVH to provide evidence establishing that there were suitable, available positions which Ms. Pena-Flores could have discovered and for which

she was qualified. *See Beverage Distributors Co., LLC*, 2013 WL 6458735, at *3 n.5 (collecting cases).

I find that VVH has failed to meet its burden of proving that Ms. Pena-Flores failed to mitigate her damages. Accordingly, VVH's motion for summary judgment regarding failure to mitigate is denied.

### B. Failure to Accommodate

VVH asserts that Ms. Pena-Flores cannot make a prima facie case of failure to accommodate under either the ADA or the CADA. The standard is the same under both statutes. *See Aubrey v. Koppes*, 17-cv-1501-RM-MLC, 2018 WL 296068, *3 (D. Colo., Jan. 4, 2018) (citing *Gamble v. Levitz Furniture Co.*, 759 P.2d 761, 763–66 (Colo. App. 1988) ("The ADA and CADA are parallel statutes and the Colorado courts rely upon ADA cases in the interpretation of the CADA.").

The Tenth Circuit has established a modified burden-shifting framework to assess failure-to-accommodate claims. Under this framework, an employee must prove a prima facie case by demonstrating that "(1) she is disabled; (2) she is 'otherwise qualified;' and (3) she requested a plausibly reasonable accommodation." *Punt v. Kelly Services*, 862 F.3d 1040, 1050 (10th Cir. 2017) (quoting *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012)) (internal quotations omitted). Establishing a prima facie case is "not onerous." *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015).

If the plaintiff meets her burden of proving a prima facie case, the burden shifts to the employer to present evidence "conclusively rebutting one or more elements of plaintiff's prima facie case." *Id.* (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999)) (internal quotations omitted). "If the employer does either of the above, summary judgment will be

appropriate for the employer unless the employee then . . . rehabilitates any challenged elements of . . . her prima fac[ie] case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.* (quoting *Smith*, 180 F.3d at 1179) (internal quotations omitted).

In determining whether an employee requested a plausibly reasonable accommodation at the prima facie stage, "[t]he federal regulations implementing the ADA envision an interactive process that requires participation by both parties.'" *McFarland v. City & Cty. of Denver*, 744 F. App'x 583, 586 (10th Cir. 2018) (quoting *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998)) (internal quotations omitted). The interactive process requires good faith effort from both sides, although "[t]he exact shape . . . will necessarily vary from situation to situation and no rules of universal application can be articulated." *Smith*, 180 F.3d at 1172 (citing *Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 515 (1st Cir. 1996)).

For the purpose of this claim, the parties do not dispute that Ms. Pena-Flores is disabled or that she was otherwise qualified. Instead, the parties dispute the extent to which Ms. Pena-Flores requested accommodation and the extent to which VVH provided reasonable accommodation. Ms. Pena-Flores argues that VVH failed to accommodate her in two distinct ways: (1) her supervisors pressured her into finishing her duties more quickly, which she could not do without violating her work restrictions, and (2) VVH failed to reassign her solely to shifts as a menu coordinator or cashier.

First, Ms. Pena-Flores testified that she felt pressured by supervisors into completing her duties faster. Although VVH initially accommodated Ms. Pena-Flores by providing her with the revised work flow, and although Ms. Pena-Flores testified that she was never expressly instructed to do a task that violated her doctor's work restrictions, Ms. Pena-Flores also testified

12

that she could not complete the work flow duties within the time allotted without violating her work restrictions.[1]  ECF No. 30 ¶¶ 23, 26, 31; ECF No. 31 ¶ 26, 31; ECF No. 31 at 16.  For example, Ms. Pena-Flores was provided a minute-by-minute list of her daily job duties.  ECF No. 32-2 at 58:25–59:20.  When Ms. Pena-Flores did not finish these duties "exactly on time," even "three to five minutes late," Ms. Scarbrough rebuked Ms. Pena-Flores for "not respect[ing] the list."  *Id*.  Ms. Pena-Flores was also occasionally assigned to stocking duties that required her to complete certain tasks within a certain amount of time, which she testified was not possible without violating her work restrictions.  *Id.* at 95:2–24.  Ms. Pena-Flores met with Ms. Larsen on July 11, 2016 to discuss her timing concerns.  ECF No. 31 at 7.  Ms. Pena-Flores believes that Ms. Larsen never investigated these issues, and VVH does not dispute this belief.  *Id*.  Although there remains uncertainty about the exact evolution of Ms. Pena-Flores' changing job duties, a reasonable juror could conclude that VVH failed to sufficiently engage in the interactive process by failing to respond to Ms. Pena-Flores' concerns.

This alone is sufficient to establish a prima facie case of failure to accommodate.  However, in the interest of completeness I also address Ms. Pena-Flores' argument that VVH unreasonably failed to reassign her to menu coordinator or cashier shifts.  The parties dispute whether Ms. Pena-Flores properly communicated this desire to VVH.  Although Ms. Pena-Flores never asked to be reassigned to these shifts, she did suggest to Ms. Larsen that she performed well in cashier duties.  ECF No. 30-2 at 138:22–139:9.  Ms. Pena-Flores also alleges that she asked her coworker to ask Mr. Dombrowski to assign her to more cashier shifts, although VVH

---

[1] Somewhat contradictorily, Ms. Pena-Flores also asserts that "[t]here was never a time in which Pena could not perform her assigned duties under her workflow following her injury."  ECF No. 31 at 7.  However, interpreting the facts in the light most favorable to Ms. Pena-Flores, this statement is not necessarily contradictory.  It could mean either that Ms. Pena-Flores completed her duties in violation of her work restrictions or that Ms. Pena-Flores completed her duties comporting with her work restrictions but outside of the allotted time frame.

disputes this. ECF No. 31 ¶ 36; ECF No. 32 ¶ 36. Additionally, Ms. Pena-Flores' supervisors must have been aware that she was struggling despite her provided accommodations, given the July 11, 2016 meeting in which Ms. Pena-Flores expressed her concerns. A reasonable juror could find that based on this awareness, VVH should have engaged in further discussions about accommodations, including shift reassignment.

The parties also dispute whether such a reassignment would be reasonable. Ms. Pena-Flores argues that it would merely constitute a change in schedule, because dietary aides like Ms. Pena-Flores rotate among tasks including menu coordination, cashier duties, tray passing, and stocking depending on the day. ECF No. 31 at 17. Each dietary aide is expected to perform each of these tasks. *Id.* In contrast, VVH asserts that such a change constitutes an entirely new position, and that no vacant menu coordination or cashier positions were open. *See Johnson v. Sedgwick Cty. Sheriff's Dep't.*, 461 Fed. Appx. 756, 758 (10th Cir. 2012) (noting that an employee has no duty to accommodate an employee by creating a new position or a new vacancy). VVH also notes that Ms. Pena-Flores had previously performed poorly in the menu coordination position.

Yet even assuming that it would not be reasonable to assign Ms. Pena-Flores to menu coordination shifts based on prior poor performance, that still leaves the cashier shifts. Ms. Pena-Flores has raised a genuine dispute of material fact regarding the extent to which the cashier shift constitutes a new position or merely a change in schedule. Assuming it constitutes merely a change in schedule, a reasonable juror could find that VVH could have reasonably accommodated Ms. Pena-Flores by reassigning her to cashier shifts. Even if it were not reasonable to reassign Ms. Pena-Flores solely to cashier shifts, a reasonable juror could find that

14

VVH could have reasonably accommodated Ms. Pena-Flores by simply providing her with more cashier shifts.

Ms. Pena-Flores has established a prima facie case of failure to accommodate twice over based on both pressure from her supervisors to work faster and VVH's failure to reassign her to cashier shifts. VVH has failed to sufficiently rebut the elements of Ms. Pena-Flores' prima facie case of failure to accommodate.

Accordingly, VVH's motion for summary judgment on Ms. Pena-Flores' failure to accommodate claims under the ADA and the CADA is denied.

### C. Unlawful Discharge

VVH also argues that Ms. Pena-Flores has failed to prove her unlawful discharge claim. Because Ms. Pena-Flores presents no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. *See Taylor v. Pepsi-Cola Co.*, 195 F.3d 1106, 1109 (10th Cir. 1999). The standard is the same under both the ADA and the CADA. *See Aubrey*, 2018 WL 296068, *3 (citing *Gamble*, 759 P.2d at 763–66). Under the *McDonnell Douglas* framework, to prove unlawful discharge a plaintiff must first establish a prima facie case by "demonstrating that: (1) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (2) her employer terminated her employment under circumstances giving rise to an inference that the action was based on her disability." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1259 (10th Cir. 2001) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997)).

Should a plaintiff establish a prima facie case, the burden shifts to the employer to "articulate a legitimate nondiscriminatory reason for the action." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998). And should the employer do so, the burden shifts back to

the plaintiff to show that the employer's articulated reason for discharge is merely pretextual. *See id*.

VVH argues that Ms. Pena-Flores cannot establish a prima facie case of unlawful discharge, and that even if she can, VVH has legitimate, non-discriminatory reasons for terminating Ms. Pena-Flores which are not pretextual.

1. Prima Facie Case

VVH argues that Ms. Pena-Flores cannot establish a prima facie case because her disability rendered her unqualified. ECF No. 30 at 16. The parties do not dispute the second prong of the prima facie case, that Ms. Pena-Flores was fired based on her disability. *Id*.

To determine whether a plaintiff is qualified, courts assess (1) "whether her impairment prevented her from performing the essential functions of her job," and if so, (2) "whether she might have nevertheless been able to perform those functions if the [employer] provided her a reasonable accommodation." *Robert v. Bd. of Cty. Comm'rs of Brown Cty., KS*, 691 F.3d 1211, 1216 (10th Cir. 2012). An employer "need not create a new job or even modify an essential function of a vacant job in order to make it suitable for the disabled employee, because such a reconfigured job is not considered an existing vacant position." *Smith*, 180 F.3d at 1170.

The parties dispute Ms. Pena-Flores' ability to perform her essential duties as a dietary aide. VVH emphasizes that Ms. Pena-Flores progressively indicated that she was able to do less and less work. Eventually, as both Ms. Larsen and Ms. Gredig testified, Ms. Pena-Flores told her supervisors that "she was not capable or able to do any job that [VVH] offered" her due to pain in both her injured right arm and her uninjured left arm. ECF No. 30-6 at 111:17–19; ECF No. 30-4 ¶ 14. Yet Ms. Pena-Flores has testified that she never told her supervisors that she was experiencing any pain in her uninjured left arm or that she was unable to perform her assigned

16

duties. ECF No. 31-1 ¶¶ 10–11. Instead, Ms. Pena-Flores testified that she was performing without any major problems and that "[t]here was never a time in which [she] could not perform her assigned duties under her workflow following her injury." ECF No. 31 at 7.

The testimony of Ms. Larsen and Ms. Gredig on the one hand, and Ms. Pena-Flores on the other hand, directly conflict. Given conflicting testimony, it is not my place at the summary judgment stage to discern who among the parties and witnesses is telling the truth.

As noted, there is potential contradiction regarding Ms. Pena-Flores' concurrent argument that she was unable to complete her work flow duties in the allotted time without violating her work restrictions. *See supra* note 1. Yet, also as discussed, Ms. Pena-Flores' arguments taken together could mean either that she nevertheless completed her duties in violation of her work restrictions, or that she completed her duties outside of the allotted time. Either way, VVH makes no argument that it was an essential function of Ms. Pena-Flores' job that she complete her duties within the allotted time; only that she complete her duties. Ms. Pena-Flores herself testified that the duties were not inherently violative of her work restrictions. ECF No. 30 ¶¶ 26, 31. Thus Ms. Pena-Flores' concurrent arguments about her ability to perform her duties are not necessarily contradictory and do not indicate that she was unable to perform the essential functions of her job.

I find that there is a genuine dispute of material fact regarding whether Ms. Pena-Flores was able to perform the essential functions of her job as dietary aide even with reasonable accommodation. I therefore find that Ms. Pena-Flores has met her burden on summary judgment of establishing a prima face case of unlawful discharge.

    2. <u>Legitimate, Non-Discriminatory Reason and Pretext</u>

VVH argues that even if Ms. Pena-Flores can establish a prima facie case of unlawful discharge, VVH terminated Ms. Pena-Flores for the legitimate, non-discriminatory reason that "no reasonable accommodation was available and she did not perform the duties of her job." ECF No. 30 at 17.

The same fact disputes plague this issue. Where VVH provides facts indicating that Ms. Pena-Flores said she was unable to work even with accommodations, Ms. Pena-Flores contests both that she ever made such statements and the truth of such statements. Because VVH hinges its argument solely on Ms. Pena-Flores' alleged statements to her supervisors, and because Ms. Pena-Flores disputes the occurrence of those statements, I find that there is a genuine dispute of material fact regarding whether VVH had a legitimate, non-discriminatory reason for terminating Ms. Pena-Flores.

Because VVH has failed to conclusively establish a legitimate, nondiscriminatory reason for terminating Ms. Pena-Flores, I do not analyze pretext.

Accordingly, VVH's motion for summary judgment on Ms. Pena-Flores' unlawful discharge claim is denied.

### D. Retaliation

The *McDonnell Douglas* framework also applies to retaliation claims under the ADA and the CADA. *See Anderson v. Coors Brewing Co.*, 181 F.3d at 1178; *Aubrey*, 2018 WL 296068, *3 (citing *Gamble*, 759 P.2d at 763–66). To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, Ms. Pena-Flores must show that: (1) she engaged in protected activity; (2) she faced an adverse employment action; and (3) a causal connection exists between her protected activity and the adverse employment action. *See Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186–87 (10th Cir. 2016). The parties do not dispute that Ms. Pena-Flores engaged

in protected activity when she complained to human resources on July 11, 2016, or that she experienced an adverse employment action when VVH terminated her on August 3, 2016. ECF No. 30 at 18–19; ECF No. 31 at 7.

The parties dispute only causation. To show causation, a plaintiff "may rely solely on temporal proximity . . . where his protected activity is closely followed by an adverse employment action." *Id.* at 1191. The Tenth Circuit has held that a one and one-half month period between the protected activity and the adverse employment action may, by itself, establish causation. *See Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994). Here, VVH terminated Ms. Pena-Flores three weeks after she complained to human resources. ECF No. 31 at 7; ECF No. 30 ¶ 37. This three-week period is sufficient on its own to establish causation. *See Ramirez*, 41 F.3d at 596.

VVH argues that it can nevertheless establish a legitimate, nondiscriminatory reason for Ms. Pena-Flores' termination. Specifically, VVH argues that it terminated Ms. Pena-Flores based on Ms. Pena-Flores' statement that she could no longer perform the essential duties of her position even with reasonable accommodation. Yet as discussed above, the parties disagree about whether Ms. Pena-Flores made such a statement. And VVH hinges its entire nondiscriminatory justification on Ms. Pena-Flores' alleged statement, without providing additional facts about her alleged inability to perform. As such, there exists genuine dispute of material fact regarding whether VVH had a legitimate, nondiscriminatory reason for Ms. Pena-Flores' termination.

Because VVH has failed to conclusively establish a legitimate, nondiscriminatory reason for terminating Ms. Pena-Flores, I do not analyze pretext. Accordingly, VVH's motion for summary judgment regarding Ms. Pena-Flores' retaliation claim is denied.

**ORDER**

The Court's role at this stage of the litigation is not to assess the merits of plaintiff's claims or to resolve disputes of fact or credibility. Rather, the Court's role now is simply to determine whether the plaintiff has shown that there are genuine fact disputes on material components of her claims or the defendant's defenses such that the case cannot be decided as a matter of law at this time. I find that there are such fact disputes. Therefore, defendant's motion for summary judgment, ECF No. 30, is DENIED. Summary judgment is denied with respect to all six of plaintiff's remaining claims.

DATED this 13th day of January, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge